IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| RONALD EUGENE HILL | § | |
| VS. | § | CIVIL ACTION NO. 9:21-CV-41 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Ronald Eugene Hill, an inmate currently confined at the O.L. Luther Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural Background

Petitioner is currently confined pursuant to a judgment and sentence in the 145th Judicial District Court of Nacogdoches County, Texas. *The State  of Texas v. Ronald Eugene Hill*, No. F1622496 (doc. #8-11, pgs. 81-82). Petitioner was charged with driving while intoxicated-third or more, enhanced by two prior felony convictions, increasing his punishment range to imprisonment for twenty-five years to ninety-years or life. Indictment (doc. #8-7, pg. 6). Petitioner informed the court that he wished to plead "guilty" to the charged offense and have the trial court assess punishment. Plea Hearing, Reporter's Record ("RR") Vol. 3 of 4  (doc. #8-16). After properly admonishing Petitioner of his rights and questioning whether his plea was freely and voluntarily made, the trial court accepted Petitioner's plea of "guilty" to the indictment and pleas of "true" to the enhancement allegations on February 20, 2018. *Id*. The trial court ordered the preparation of a presentence investigation report for a later sentencing hearing. *Id*. At the sentencing hearing held

November 14, 2018, the trial court took judicial notice of the presentence investigation, and heard sworn testimony of several witnesses from both the State and Petitioner. Contested Punishment Hearing, RR Vol. 3 of 4 (doc. #8-17). At the conclusion of the hearing, on November 27, 2018, the trial court sentenced Petitioner to imprisonment for a thirty-three year term. *Id*.

Petitioner appealed his conviction and sentence which was affirmed by the Twelfth Court of Appeals on April 8, 2020. *Hill v. State*, 2020 WL 1697429, No. 12-18-00358-CR (Tex. App. – Tyler 2020, pet. ref'd) (doc. #8-1). Petitioner filed a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals ("TCCA") which was refused on August 19, 2020. *Hill v. State*, PD-0493-20.[1]

Petitioner then filed a state application for writ of habeas corpus, which was denied on November 18, 2020, without a written order on findings of trial court, without hearing, and on the court's independent review of the record. *Ex parte Hill*, WR-91,862-01 (doc. #8-18). This federal petition followed (doc. #1).

<u>The Petition</u>

Petitioner asserts the following points of error:

1. He was denied effective assistance of counsel for (a) failing to investigate and put on the statute of limitations defense which induced a guilty plea and (b) failing to investigate Petitioner's mental health history and secure a mental health evaluation which led to an involuntary plea;

2. The evidence was insufficient;

3. The state writ process was unreasonable; and

4. Cumulative error.

<u>The Response</u>

Respondent filed an Answer on June 18, 2021, along with the state court records (doc. #s 7 & 8). Respondent argues Petitioner's claims are either unexhausted and procedurally barred or lack merit. *Id*. Petitioner filed a Reply February 22, 2022 (doc. #11).

---

[1] The court could not find the white card in the state court records provided. *See* https://search.txcourts.gov/Case.aspx?cn=PD-0493-20&coa=coscca.

Findings of Fact & Conclusions of Law

**FINDINGS OF FACT**

1.    The Applicant lists six (6) grounds for his writ application.

2.    In Ground #1, he states that his retained trial counsel failed to investigate his mental health history, and seek a mental health expert to aid in his defense. This is simply false.  Counsel met with the Applicant numerous times to discuss his mental health issues.  (See Exhibit #1. the Affidavit of trial counsel along with his supporting documentations.) Counsel introduced 125 pages of mental health history reports for the judge to consider.  In fact, the court had to reset the hearing due to the fact the 125 pages took so long to read.  There was no need to call an expert due to the fact the records from his mental healthcare providers were clearly written.  No expert opinion was necessary to explain them.

3.    In Ground #2, he states that he was incompetent at his trial.  The Applicant wrote letters to his counsel while the case was pending on May 6, 2018, June 26, 2018, September 17, 2018, and October 9, 2018.  In those letters he wrote about trial preparations including: a 10 year plea bargain, his request to see any law/statute that prevents the use of any item that he wants his attorney to use at trial, a motion to dismiss for lack of evidence, motion for a change of venue, issuing a subpoena to the Burke Center (a facility that provided him with mental healthcare) for records, the hospital records for his treatment on the day in question for this case, a recanting of his statement to law enforcement at the hospital, a request to have DNA taken from his blood used to determine his blood alcohol level on the day in question, proof regarding whether he was given his Miranda Warnings at the hospital, obtaining copies of all videos regarding the incident, grounds for impeachment of a witness named Erica Innis, the length of time between the offense date and the indictment date to establish a Statute of Limitations defense, a copy of the discovery materials obtained by counsel, all rules and regulations relating to a judge sentencing him, procedures for a pre-sentence investigation, character witnesses, wearing street clothes to court, visits with the counsel's private investigator who obtained his mental health records, issuance of subpoenas to various character witnesses, offering into evidence his hospital records and Burke Center records, and names and telephone numbers of numerous witnesses for trial.

      All of the above information written by the Applicant himself is absolute proof that he had the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding AND that he had a rational as well as factual understanding of the proceedings against him.  In addition, a thorough examination of the 125 pages of medical records showed that the Applicant had depression and alcoholism.  They did not indicate that he was mentally incompetent.

4.    In Ground # 3, he claims that counsel failed to investigate his case.  The Court refers to Exhibit 1 for the following findings: Counsel hired a private investigator that assisted in the case, he obtained the medical records as requested, he obtained witnesses for the Applicant, and he explained to the

3

Applicant that he was wrong about the Statute of Limitations defense. Trial counsel was able to get an earlier DWI of the Applicant's dismissed. This was a case form an arrest in 2013. Counsel was able to get it dismissed on March 6, 2014. The Applicant confuses the older arrest with the current one. As mentioned in the exhibit this is his seventh (or more) DWI arrest. The offense date for this case is August 18, 2014. The case was indicated on July 29, 2016 which was within the Statute of Limitations.

5.    In Ground # 4, he claims counsel allowed him to plea to a time barred indictment. As mentioned above, the indictment was not time barred.

6.    In Ground # 5, he claims that there was no evidence to convict for DWI. To the contrary, the evidence indicating his guilt of DWI was: his noncustodial statement that he was heavily intoxicated before getting in the car and leaving before the crash, the eye witness, Michael Christian who stated that he saw the Applicant drive the vehicle as it crashed and that he observed the Applicant showing signs of intoxication right after the wreck, the lab report showing he was more than three times over the legal limit, as well as statement of guilt during the entry of his plea. In this ground, he continues to think that his lab result was from an earlier DWI. The evidence shows that the lab result was from the offense that is the basis of this case.

7.    In Ground # 6, he claims that his appellate counsel was ineffective for failing to raise the defense of statute of limitations. Please see Exhibit # 2, the affidavit of appellate counsel Dean Watts. As mentioned above, the indictment for this offense was brought within the statute of limitations.

## CONCLUSIONS OF LAW

1.    The essence of the Applicant's claim is that his counsel was ineffective. Exhibit # 1 shows in great detail what Counsel John Boundy did to represent his client. Mr. Boundy's representation of the Applicant was far above an objective standard of reasonableness. Therefore, there was no prejudice to the Applicant.

2.    It is also clear that there was no ineffective assistance of counsel by Mr. Watts as well. He filed his Anders brief, and the appellate court agreed with him.

3.    Mr. Boundy did a quality job in his representation of the Applicant. By putting forth the mitigating evidence in the manner that he did he kept his client from receiving 99 years that he otherwise would have received.

Findings of Fact & Conclusions of Law (doc. #8-21, pgs. 4-6).

<u>Standard of Review</u>

Title 28 U.S.C. § 2254(a) allows a district court to "entertain an application for a writ of

habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

4

28 U.S.C. § 2254(a).

Section 2254 generally prohibits a petitioner from re-litigating issues that were adjudicated on the merits in State court proceedings, with two exceptions. *See* 28 U.S.C. § 2254(d). The first exception allows a petitioner to raise issues previously litigated in the State court in federal habeas proceedings if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The second exception permits re-litigation if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal habeas relief from a state court's determination is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Federal habeas courts are not an alternative forum for trying facts and issues which were insufficiently developed in state proceedings. *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Further, following the Supreme Court's decision in *Cullen v. Pinholster*, federal habeas review under 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. 170, 181 (2011).

A decision is contrary to clearly established federal law if the state reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13. An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id.* Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the

evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)), *cert. denied*, 558 U.S. 847 (2009). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

The deferential Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review applies even where the state court fails to cite applicable controlling Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 8-9 (2002). Likewise, "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when ... state habeas relief is denied without [a written] opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes the state court applied the proper "clearly established Federal law" and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)). "[A] federal habeas court has 'no authority to grant habeas corpus relief simply because [it] conclude[s] in [its] independent judgment, that a state supreme court's application of [clearly established federal law] is erroneous or incorrect.'" *Kossie v. Thaler*, 423 F. App'x 434, 436 (5th Cir. 2011) (quoting *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002)).

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to § 2254(e)(1)'s presumption of correctness to state habeas

court findings of fact nor to applying § 2254(d)'s standards of review).

Analysis

I.    *Knowing and Voluntary Plea*

Petitioner contends counsel was ineffective in failing to investigate his mental health history which led to an involuntary guilty plea despite a preponderance of evidence that Petitioner was incompetent to stand trial. An independent review of the record, regardless, reveals that the guilty plea was knowing and voluntary.

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case demonstrates petitioner's plea was voluntary and intelligent and was not the result of any misrepresentation. To start, the voluntariness of petitioner's plea is demonstrated by his signature on the Written Plea Admonishments-Waivers-Stipulations and Supplemental Admonishments. Plea Papers (doc. #8-9, pg. 7). These documents demonstrate petitioner was admonished as to the maximum punishment range for driving while intoxicated -third or more, enhanced by two prior felony convictions, with a minimum of twenty-five years and a maximum of ninety-nine years or life. *Id*., pg. 2. Petitioner also makes the following concessions in his plea agreement:

> I do admit and judicially confess that I knowingly, intentionally, and
> unlawfully committed the acts alleged in the indictment, at the time, in the

7

place, and in the manner alleged. I am GUILTY of the offense of DRIVING
WHILE INTOXICATED WITH PRIORS. I enter my plea of GUILTY to
said offense. My plea of GUILTY is voluntary and is not influenced by any
consideration of fear or any persuasion or any delusive hope of pardon.

*Id.* (doc. #8-8, pg. 7). Petitioner's trial counsel and the prosecutor signed the agreement after

concluding that Petitioner was legally competent to stand trial and that the statements made by

Petitioner were freely and voluntarily made and entered and that Petitioner understood the

admonitions given to him by the Court and that he was aware of the consequences of his plea. *Id.*,

pg. 5.

The trial court fully admonished Petitioner during the plea hearing, engaging in the following

exchange with Petitioner:

| | |
|---|---|
| THE COURT: | And, sir, are you Ronald Hill, the person named in this case? |
| THE WITNESS: | Yes, sir. |
| THE COURT: | And, Mr. Hill, have you and your lawyer carefully been over the indictment so that you understand the charge against you? |
| THE WITNESS: | Yes, sir. |
| THE COURT: | Do you understand that if the – I assume there's two – prior felony convictions are proven true, if they're proven true in a punishment hearing, then minimum is 25; the maximum is 99 years or life. Do you understand that? |
| THE WITNESS: | Yes, sir. |
| THE COURT: | Okay. |
| MR. GILCREASE: | Judge, I believe, he's entering pleas of true to the -- |
| THE COURT: | Oh, is he? Okay. |
| THE DEFENDANT: | What? |

(Conference between counsel and defendant).

| | |
|---|---|
| THE COURT: | You do have the following rights: The right to remain silent, the right to a jury trial, the right to bring people here to testify for you, and the right to cross-examine and confront the witnesses. Do you understand all these rights? |
| THE WITNESS: | Yes, sir. |

8

THE COURT:          Is that correct?

THE WITNESS:        Yes, sir.

THE COURT:          I have the plea papers.  Did you and your lawyer carefully go over these so that you understand them?

THE WITNESS:        Yes, sir.

THE COURT:          Did you sign these freely and voluntarily?

THE WITNESS:        Yes, sir.

THE COURT:          Do you understand they contain your admission of guilt?

THE WITNESS:        Yes, sir.

THE COURT:          Mr. Boundy, you believe him to be competent?

MR. BOUNDY:         I do, Your Honor.

THE COURT:          You've gone over the plea papers and purpose of the hearing with him?

MR. BOUNDY:         Yes, Judge.

THE COURT:          Sir, do you understand that you're giving up your right as far as what's being done today; in other words, your entry of guilty?  You understand that?

THE WITNESS:        Yes, sir.

THE COURT:          You still will have the right to appeal what takes place at the punishment hearing.  Do you understand that?

THE WITNESS:        Yes, sir.

                              ***

THE COURT:          Mr. Boundy, I can't remember, did I ask you if you believed him to be competent?

MR. BOUNDY:         You had not at this point, Your Honor.

THE COURT:          I just flat skipped over all that.  You believe him to be competent?

MR. BOUNDY:         I do.

THE COURT:          And you've gone over the plea papers and purpose of the hearing with him?

9

| | |
|---|---|
| MR. BOUNDY: | I have. |
| THE COURT: | And does he waive arraignment? |
| MR. BOUNDY: | Yes. |
| THE COURT: | And, sir, as to this new case, sir, what is your pleas guilty or not guilty? |
| THE WITNESS: | Guilty. |
| THE COURT: | As I mentioned, there are two prior felony convictions that are alleged. Are those true or not true? |
| THE WITNESS: | True. |
| THE COURT: | All right. And I don't have it in front of me, so I don't know what's on the indictment. Are there jurisdictional -- |
| MR. GILCREASE: | Yes, sir. |
| THE COURT: | – enhancements as well? |
| | Then in the indictment it alleges that you have at least two prior DWI convictions. Are those true or not true? |
| THE WITNESS: | They're true. |
| THE COURT: | Has anybody forced you or threatened you to enter these pleas against your will? |
| THE WITNESS: | No, sir. |

***

| | |
|---|---|
| THE COURT: | I'll go ahead and make the following findings: The Defendant is competent to stand trial. The evidence is sufficient to sustain a conviction. The Defendant has entered his pleas freely, knowingly, and voluntarily. I'll approve the waivers, consents. I will accept the plea of guilty and the jurisdictional pleas of true, the enhancement pleas of true. |
| | I'll make the findings of true as to the enhancement and the jurisdictional allegations. And I'll withhold making a finding of guilt at this point, and I'll address that at our contested punishment hearing. |
| | Now, sir, to assist you – for your lawyer to assist you, you need to let him know of any and all witnesses that you would like called to testify. You cannot wait until the week of the hearing. You have to let him know as soon as possible. If you happen to know who all those people are today, tell him |

10

| | |
|---|---|
| | today so that he can get an investigator to serve those witnesses with subpoenas. Okay? |
| THE DEFENDANT: | (Moving head up and down.) |
| THE COURT: | As well as any other information that you need for your punishment hearing? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Don't – because this is very serious as you obviously are well aware. |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And the sooner you can get the information to your attorney, the sooner he will be helping you. |
| THE DEFENDANT: | Yes, sir. It's already in the process. |
| THE COURT: | Good. All right then. |
| | And, Danita, you heard him say he wants the full PSI? |
| THE PROBATION OFFICER: | Yes, sir. |
| THE COURT: | And are you a resident of Texas? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | All right. Good. Then we'll see you on whatever that punishment hearing date is, and we are adjourned. |

Plea Hearing, Vol. 3 of 4 (doc. #8-16, pgs.4-10).

Petitioner's signature on the guilty plea documents is prima facie proof of the validity of the plea and is entitled to "great evidentiary weight." *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). Petitioner's formal declarations in open court also carry "a strong presumption of verity" and constitute a formidable barrier to any subsequent collateral attack. *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Because Petitioner has not provided any evidence or argument that would overcome these "strong presumptions of verity," this court denies any allegation made by Petitioner concerning the validity of his guilty plea. *Blackledge*, 431 U.S. at 74 (finding "[t]he subsequent presentation

11

of conclusory allegations which are unsupported by specifics is subject to summary dismissal.").

## II.    *Ineffective Assistance of Counsel*

As outlined above, Petitioner argues counsel was ineffective for: failing to investigate and put on the statute of limitations defense which induced a guilty plea and failing to investigate Petitioner's mental health history and secure a mental health evaluation which lead to an involuntary plea. For the foregoing reasons, Petitioner's claims of ineffective assistance of counsel should be denied.

### A.    **Substantive Law**

Federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing Petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive Petitioner of a fair trial. *Id.* at 687. To meet the first prong, Petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

As discussed above, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the

12

facts" in light of the record before the state court.  28 U.S.C. §§ 2254 (d)(1) and (2); *Williams*, 529 U.S. at 412.  Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective.  Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 562 U.S. at 101.  As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id*. (internal quotation marks and citation omitted).

### B.    Application

#### 1.    *Failing to Investigate and Put on Statute of Limitations Defense*

Petitioner contends that trial counsel was ineffective for failing to investigate and assert a defense based on the expiration of the applicable statute of limitations.  Petitioner states that the alleged DWI in this case was on August 14, 2014, and that he was indicted on July 27, 2016, and then prosecuted on November 27, 2018.  Petitioner argues that the statute of limitations for DWI in Texas is three years under Article 12.01 of the Texas Code of Criminal Procedure.  While Petitioner concedes his indictment was within the statute of limitations, he alleges his prosecution was not as it was four years and three months after the August 14, 2014, DWI allegation.

Trial counsel addressed Petitioner's claims in his affidavit provided to the state habeas court:

> "The defendant makes reference to a statute of limitations defense in his writ. However, other than superficial questioning about the timing of his indictment in one of our initial meetings at the jail, this matter was not discussed further to the best of my recollection.
>
> "In one of my first meetings with the defendant he questioned his belief of a delay in the filing of his indictment.  However, I only recall an inquiry not a full throttled examination of a proposed defense.  (This is documented in Ex. 4 his letter dated May 7, 2018).

"I do not have notes of any significant exchange during that meeting. However, this would not be the first time such a question had been posed. My reply would have been while not having specifics on the delay, based on my experience as a prosecutor, including time as a felony prosecutor in the Nacogdoches District Attorney's Office I could surmise what happened in his case. Based on the fact there had not been any field sobriety tests performed on the defendant at the time of the crash, the State would wait to get the lab results to have evidence of intoxication. Upon obtaining that, the case then would be presented to the grand jury.

"I do not have any notes or recollection of the defendant having any additional concerns regarding this issue. The fact that he didn't write me to raise concern indicates to me it was a dead issue and we turned our attention to the defense of the case as outlined above.

"However, if he had pressed further, I would have also explained that he had been indicted on July 29, 2016 and a warrant issued on the case Aug. 2, 2016. Further, that it is not uncommon in Nacogdoches County for a cursory effort to serve a warrant be made. If unsuccessful, then the warrant would "go into the system" which means entered into the computer. Ultimately a defendant usually has a brush with law enforcement somewhere down the road, at which time they are served the capias warrant and ordered to appear in court on the charge.

"None of this would give rise to a legal defense. If the defendant had raised the concern or question, that would have been my reply."

Affidavit (#8-21, pgs. 13-14).

While "counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary," a reasonable investigation depends in part on the information supplied by the defendant. *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691). And, a petitioner alleging an inadequate investigation must show what such investigation would have uncovered and how the defense would benefit from that investigation. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Here, Petitioner fails to meet his burden, offering no specifics as to what an additional investigation would have revealed. In reality, Petitioner misunderstands the statute of limitations.[2] Counsel is not required to file frivolous motions and cannot be ineffective in failing to do so. *Koch v. Puckett*, 906 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson*, 160 F.3d 1029, 1036-37 (5th Cir. 1998). This claim should be denied.

---

[2] Section 12.01 outlines the timeline for when felony indictments may be *presented*, not tried. Tex. Crim. P. art. 12.01.

2.    *Failing to Investigate Mental health History and Secure Mental Health Evaluation*

Petitioner contends that counsel was ineffective in failing to investigate Petitioner's mental health history and secure a mental health evaluation which led to an involuntary plea. As outlined above, the trial court addressed this claim in detail in its Findings of Fact and Conclusions of Law. Counsel's affidavit outlines his efforts in this regard and the informed advice he gave Petitioner in recommending the guilty plea:

> "At the jail visit prior to the pretrial hearing date in Jul., 2018, we further discussed the adverse impact of the defendant's criminal history again. I advised him that generally juries looked dimly on defendants with multiple DWI's in their history. Especially in a case like this where there had been a major collision with injured victims.
>
> "During this talk, as will all discussions with the defendant, he emphasized his mental health history. He had provided me with an 11 page excerpt of records from the Burke Center regarding an admission from Sept., 2014. The admission was based on a history in Oct. 2013 of an alleged suicide attempt by drinking rubbing alcohol and being admitted to the Rio Grand State Center. Those records reflected his diagnosis of Major Depressive Disorder, recurrent, with psychosis and alcohol dependence. Contrary to the defendant's assertions that those records indicated he was incompetent, they showed that at the time of his discharge on Sept. 23, 2014 he was noted by the psychiatrist to have a stable state of mind and was not suicidal or homicidal. Based on that clinical picture they recommended he be evaluated for standard after care treatment through the Burke Center and approved him living at home with his parents.
>
> "As part of my investigation, I subpoenaed and obtained 125 pages of mental health records of the defendant from the Burke Center in June, 2018. These included evaluations, notes and admissions for the time frame of Oct. 2013 through Mar. 2018. The excerpt provided by the defendant was included in the packet.
>
> "The defendant and I talked extensively about how his mental health history might impact his current case. Early on in my representation I had advised him that since this case involved the voluntary ingestion of alcohol, insanity was not an available legal theory and we quickly abandoned any discussion of it.
>
> "We did discuss my opinion that his mental health history was best used in the form of mitigation evidence in the event of a conviction or need to conduct a punishment hearing.
>
> "At the Jul. 20, 2018 pretrial hearing, the defendant decided to enter a voluntary plea of guilty and have a contested punishment hearing before the judge. A full pre-sentence investigation was ordered and the case was reset for hearing to Nov. 14, 2018.
>
> "I spent considerable time reviewing and analyzing the records for anything that might prove beneficial to the defense in the event of any punishment hearing.

15

The defendant and I discussed the medical records and the matters contained therein. We considered the possible impact and how they correlated with the evidence from the 2014 case. In preparing for trial, then ultimately the contested punishment hearing, we had several frank conversations about the benefit/risk of relying too heavily on these records since there was information which could be used adversely to the defense. One such example was a follow-up evaluation within weeks after the crash of the 2014 case. The notes showed the defendant expressed concerns about his child support obligations and not having a job increasing his stress and depression. There was no mention of the crash or any expression of remorse at people going to the hospital because of choices made by the defendant. As a result, we agreed to raise the defendant's mental health issues by introducing the records to document the presence of his history, but then having the defendant testify and emphasize the impact of his mental health issues on his life and choices. As a tactical consideration however, the joint decision was made to avoid focusing too much on the records to prevent any rebuttal attack from the State.

"The defendant states in his writ that "the record is saturated with his mental health history, yet at best his condition was given cursory attention . . ." This was exactly what he and I agreed was how best to present the information to his advantage.

"During both the "2013 case" and the "2014 case", I had many detailed discussions with the defendant regarding legal theories, strategies and evidentiary issues. He was very specific in articulating his wishes and directing what actions he believed to be in his best interest.

"Defendant's writ inaccurately reflects these facts.

"First off, at no time during my representation of the defendant was competency an issue to me as the attorney based on my interactions and observations of the defendant.

"At all times relevant to this matter, the defendant was alert and oriented. He was rational and able to converse with me about factual and legal matters and assist me in the preparation of his defense.

"Nor during any of my involvement with the defendant did he raise any questions or concerns over the issue of competency or the need for an expert witness. My experience with the defendant tells me if he had any concern or issue, he would have expressed it.

"Further in over thirty years of practicing law, I have never told a client "I am a paramedic and have determined you are competent so we don't need an expert." On occasion I have referenced my medical background as both an EMT/P and physician assistant when discussing medical issues. But I have not, nor would I ever, substitute my experience over the need for competent medical, psychological or psychiatric intervention or evaluation. In fact, if anything, my education, training and experience have allowed a greater insight into the need for such referrals where appropriate.

"If the defendant had made any request or expressed such a concern, we would have had the conversation that as retained counsel, the defendant would need

to provide funds to hire such an expert. Or, that I would have to seek, under seal, the court's authority to obtain funds to have an expert appointed to evaluate the defendant. However, he never "repeatedly informed me" nor "asked for a competency evaluation".

"Attached hereto as "Exs. 4, 5, 6, and 7" are copies of letters from the defendant to me during the course of my representation of him in the 2014 case. I am the custodian of these records, they are kept in the regular course of my business, and it was/is the regular course of my business for me or an employee or representative with knowledge of the act, event, conditions, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto is an exact duplicate of the original.

"These letters dated May 7, 2018; Jun. 26, 2018; Sept. 17, 2018 & Oct. 9, 2018 paint a very clear picture of the defendant's mental state and his ability to articulate his intent and desires. He directs what settlement negotiation parameters he is willing to accept. The defendant further shows his of [sic] presence of mind to direct what witnesses he wants called and his ability to reason and direct the course or legal action in his case.

"There is no mention in any of these letters of an insanity defense or the need for competency evaluation. The defendant's own correspondence is squarely at odds with his description of "having a mental breakdown" during the case.

"In addition to what's reflected above, the defendant was able to coordinate the generation of over sixteen letters of recommendation via family and friends which were provided to the probation officer for inclusion in the pre-sentence investigation report which was provided to the court.

"Additionally, the defendant was very proactive during the actual contested punishment proceedings of Nov. 14, 2018 and Nov. 27, 2018. He was able to assist in the development of cross-examination questions of the State's witnesses and to direct the sequence and substance of testimony of the multiple defense witnesses. Which included testifying in his own behalf.

Affidavit (#8-21, pgs. 11-13).

In rejecting Petitioner's ineffective assistance of counsel claims, the state habeas court made a credibility determination in favor of counsel, and the statements made in the affidavit are presumptively correct under 28 U.S.C. § 2254(e)(1); *Austin v. Davis*, 876 F.3d 757, 778 (5th Cir. 2017). The TCCA denied the state application for writ of habeas corpus without a written order on findings of trial court without hearing and on the court's independent review of the record. This is an adjudication on the merits. Petitioner, here however, presents nothing that would undermine the presumption of correctness to which

the state courts' findings are entitled. *Valdez*, 274 F.3d at 946-47. Petitioner has also failed to demonstrate that his counsel's alleged ineffectiveness somehow prejudiced his trial or that but for counsel's alleged errors, the result of the proceeding would be different. *Strickland*, 466 U.S. at 693-94. This claim should be denied as Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

    *3.*    *Prejudice*

    In *Hill v. Lockhart*, the Supreme Court held that the two-prong test enunciated in *Strickland* applies to cases involving guilty pleas. 474 U.S. 52 (1985). If a defendant is represented by counsel and pleads guilty upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (internal citations and quotations omitted). A petitioner may not simply allege but must "affirmatively prove" prejudice. *Strickland*, 466 U.S. at 693. In *Hill*, the requirement of prejudice was interpreted to mean, in the guilty plea context, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test. A petitioner must establish that but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206.

    Additionally, when counsel is claimed to be ineffective at the punishment phase of trial, "the relevant inquiry is whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been 'significantly less harsh,' taking into account 'such factors as the defendant's actual sentence, the potential minimum and

18

maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.'" *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (quoting *Spriggs v. Collins*, 993 F.2d 85, 88-89 (5th Cir. 1993) and *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994) (internal citations omitted)).

Here, Petitioner has failed to show a reasonable probability that the outcome of the proceeding would have been different; thus, he has failed to make the requisite demonstration of prejudice.  Petitioner has offered no indication, nor is there any indication in the record, that he would have rejected the plea offer and proceeded to trial.  The undersigned notes that Petitioner's thirty-three year sentence is close to the minimum twenty-five years and is certainly less than the forty years offered by State during plea negotiations.[3] To the extent Petitioner asserts counsel wrongly advised him to plead guilty, any such claim is conclusory and lacks merit as Petitioner has failed to show prejudice.  "Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."  *Miller v. Johnson*, 200 F.3d 274, 272 (5th Cir. 2000).

Finally, with respect to all of Petitioner's claims of ineffective assistance of counsel that were exhausted, the state court reviewed and rejected Petitioner's claims.  The state court's decision is presumed to be correct and is entitled to a presumption of correctness under the AEDPA.  28 U.S.C. § 2254(e)(1).  This presumption applies to both implicit and explicit factual findings.  *See Young*, 356 F.3d at 629; *Valdez*, 274 F.3d at 948 n. 11.  Petitioner has failed to rebut the state court's determinations by clear and convincing evidence.

For the reasons set forth above, Petitioner has failed to show either deficient performance or prejudice regarding counsel.  As a result, Petitioner has failed to demonstrate he is entitled to relief with respect to the habeas court's determination that counsel's

---

[3] The State requested a life sentence during closing arguments.

19

performance was not unconstitutional. Petitioner has failed to show either that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, all Petitioner's ineffective assistance of counsel grounds for relief should be denied.

III.    *Insufficiency of the Evidence*

    1.    *Exhaustion*

Title 28 U.S.C. § 2254 allows a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As a prerequisite to obtaining relief under § 2254, a prisoner must exhaust all remedies available in the state system before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b) and (c).

A prisoner has not exhausted remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To comply with the exhaustion requirement, petitioner must fairly present his claim to the appropriate state court before filing a petition in federal court. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Morris v. Dretke*, 379 F.3d 199, 2014 (5th Cir. 2004). In Texas, all claims must be presented to and ruled on by the Texas Court of Criminal Appeals. *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001); *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).

A review of the state court records in this case reveals that Petitioner did not exhaust his claim of insufficiency of the evidence. Petitioner did not present this claim on direct appeal or in his petition for discretionary review. *See Hill v. State*, 2020 WL 1697429, No.

20

12-18-00358-CR (Tex. App. – Tyler 2020, pet. ref'd) (doc. #8-1); *Hill v. State*, PD-0493-20 (doc. #6, Brief); *see also Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986) (insufficiency of evidence claim barred by procedural default in failing to directly appeal the issue); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (under Texas law a claim regarding sufficiency of the evidence may be raised on direct appeal but not in a habeas proceeding). As such, Petitioner has not exhausted state court remedies with respect to his federal habeas claims and these claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *Id*. In such cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id*.; *see Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred); *see also Emery v. Johnson*, 139 F.3d 191, 196 (5th Cir. 1997) (same). Petitioner has also failed to allege, let alone show, cause and prejudice to overcome this procedural bar and has not shown actual innocence as discussed below. Petitioner's claim of insufficiency of the evidence should be denied as unexhausted and procedurally barred.

Moreover, Petitioner's claim of insufficiency of the evidence is foreclosed under Texas law as Petitioner signed a stipulation of fact and a judicial confession, admitting each element of the offense. *Monse v. State*, 990 S.W.2d 315, 318 (Tex. App. – Corpus Christi 1999, pet ref'd) (a judicial confession alone is sufficient to support a guilty plea). The trial court also found the evidence was sufficient under state law as outlined above. Petitioner's claim of insufficiency of the evidence should be denied as unexhausted and procedurally barred and wholly lacking in merit. Petitioner fails to show the state court proceedings

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decisions was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings

IV.     *The State Writ Process as Unreasonable*

Petitioner claims the state writ process was unreasonable.  This claim, however, raises only questions regarding his rights under state law, not federal law, and are not cognizable on federal habeas corpus review.  *See* 28 U.S.C. § 2254(a); *Johnson v. Thaler*, 2010 WL 2671575, at *3 (S.D. Tex. June 30, 2010) (citing *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (claim of ineffective assistance during post-conviction DNA testing proceeding presents no federal constitutional issue and does not warrant relief).  These claims simply fail to raise a federal constitutional issue as the challenges attack a proceeding collateral to the conviction and detention and are foreclosed by circuit precedent.  *See Rudd v. Johnson,* 256 F.3d 317, 320 (5th Cir. 2001) *(citing Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995).

V.     *Cumulative Error*

As to Petitioner's claim of cumulative error, the Constitution guarantees a fair trial for criminal defendants through the Due Process Clause of the Sixth Amendment, which provides defendants the right to have the effective assistance of counsel and largely defines the basic elements of a fair trial.  *See* U.S. CONST. AMEND VI; *Strickland*, 466 U.S. at 685. As analyzed above, however, Petitioner has failed to show that counsel's representation was unconstitutional.  As the Fifth Circuit has explicitly stated,"where individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'" *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993)).  Here, as set forth above, Petitioner has failed to show any individual errors of constitutional dimension with respect to trial counsel.  Accordingly,

22

Petitioner's claims that he was denied due process and a fair trial are without merit and should be denied.

<u>Recommendation</u>

This petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 should be denied.

<u>Objections</u>

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by

the district court except on grounds of plain error. *Douglass v. United Services Auto. Assoc'n.,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

SIGNED this 28th day of February, 2024.

_____
Zack Hawthorn
United States Magistrate Judge

23